IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 3:17-1197-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| MARCUS TERRELLE MARSH | ) | |
| | ) | |

This matter is before the court on the defendant's *pro se* motion and amended motion (ECF Nos. 105, 122) for compassionate release pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A). The defendant claims that he received an unusually long sentence; he is the only available caregiver for his mother; he has serious medical issues; his prior convictions occurred when he was younger; and he is rehabilitated and no longer a danger to the community.

The government has responded in opposition (ECF Nos. 112, 131) asserting, among other things, that the defendant has not shown extraordinary and compelling reasons for release because he fails to meet the U.S. Sentencing Guideline (USSG) § 1B1.13(b)(6) prerequisite of having served at least 10 years in prison. The government also suggests that the § 3553(a) factors heavily counsel against granting a reduction in the defendant's sentence. The defendant replied to the government's responses and this matter is now ripe for review.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is respectfully denied.

## STANDARD OF REVIEW

Courts may not modify a sentence once imposed with few exceptions. 18 U.S.C. § 3582(c). One exception is compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act. To grant a compassionate release motion under § 3582(c)(1)(A)(i), the district court must conduct a two-step analysis. *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024). First, the court must find "extraordinary and compelling reasons" warranting a sentence reduction. *United States v. Hargrove*, 30 F.4th 189, 194–95 (4th Cir. 2022). After a district court finds that an "extraordinary and compelling" reason for sentence modification exists, it must then evaluate the relevant § 3553(a) factors. *Id*. at 195. The defendant bears the burden to establish that he or she is eligible for a sentence reduction under § 3582. *Centeno-Morales*, 90 F.4th at 279.

The court must also determine that such a reduction would be consistent with "applicable policy statements issued by the Sentencing Commission." *United States v. Davis*, 99 F.4th 647, 654 (4th Cir. 2024). Relevant here, a newly amended Sentencing Guidelines policy statement went into effect in November 2023 and provides criteria for determining the existence of extraordinary and compelling reasons for release. Generally, the list of circumstances qualifying as extraordinary and compelling falls into several categories: (1) the defendant's medical circumstances; (2) the defendant's age; (3) the defendant's family circumstances; (4) whether the defendant was the victim of certain abuse while in custody; (5) any other circumstances or combination of circumstances that, when considered by themselves or together with any of the preceding categories, are similar in gravity; and (6)

an unusually long sentence if the defendant meets certain conditions. USSG § 1B1.13(b).

*Exhaustion of Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on his behalf. The defendant may file a motion with the court: (1) after fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021), 18 U.S.C. § 3582(c)(1)(A).

The government does not dispute the defendant's exhaustion of his administrative remedies. Thus, the court will proceed to review the matters on the merits.

PROCEDURAL HISTORY

The defendant was indicted by a grand jury in this District on December 20, 2017 and charged with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e). On February 26, 2018, the government filed an Information notifying the defendant that he was subject to enhanced penalties as an armed career criminal under the Armed Career Criminal Act ("ACCA") set forth in 18 U.S.C. § 924(e) based on his prior "serious drug offense" convictions (ECF No. 31).[1]

[1] The defendant has seven prior South Carolina drug convictions that serve as predicates for ACCA: (1) possession with intent to distribute crack cocaine, stemming from an offense on January 17, 2001; (2) possession with intent to distribute crack cocaine; (3) possession with intent to distribute marijuana within the proximity of a school; (4) possession with intent to distribute marijuana 2nd offense, all stemming from an offense on January 8, 2005; (5) possession with intent to distribute crack cocaine within the proximity of a park; (6) possession with intent to distribute ecstasy 2nd offense; and (7) possession with intent to distribute marijuana 2nd offense, all stemming from an offense on November 29, 2007 (ECF No. 31; PSR, ¶s 22, 25, 30, 33).

Pursuant to a written agreement (ECF No. 47), the defendant pleaded guilty to the charge of being a felon in possession of a firearm and ammunition. He waived his right to appeal with the exception of the denial of his motion to suppress and any determination at sentencing that the defendant was an armed career criminal.

The Presentence Report (PSR) (ECF No. 57) proposed that with the armed career criminal designation, the defendant's total offense level was 30[2] and his criminal history category was VI (based on 19 points), yielding a statutory mandatory minimum sentence of 15 years or 180 months. Absent the statutory mandatory minimum, the Guidelines range would have been 168 to 210 months imprisonment.

On September 11, 2018, U.S. District Judge Terry L. Wooten, who was originally assigned this criminal case, overruled the defendant's objection to the PSR's determination that he was an armed career criminal. Judge Wooten applied the modified categorical approach to S.C. Code Ann. §§ 44-53-370(a)(1), 44-53-375(B), and 44-53-445(A) and consulted certified prior convictions to conclude that the defendant's prior convictions were ACCA predicates (ECF No. 67, Sen. Tn. At 40–43). Judge Wooten then sentenced the defendant to the statutory mandatory minimum sentence of 180 months to be followed by 3 years of supervised release.

---

[2] The defendant's base offense level was 24. He received a 2 level enhancement because the firearm was stolen and another 2 level enhancement because he recklessly created a substantial risk of death or serious bodily injury to another in the course of fleeing from a law enforcement officer. The adjusted offense level was 28, and then a Chapter Four enhancement (due to the defendant having at least 3 prior convictions for a violent felony or serious drug offense or both) raised his offense level to 33. The defendant received a 3 level reduction for acceptance of responsibility, resulting in a total offense level of 30.

The defendant filed a notice of appeal challenging the denial of his motion to suppress and his status as an armed career criminal. The Fourth Circuit Court of Appeals affirmed the conviction and sentence in a mandate issued September 25, 2019 (ECF No. 70).[3] The defendant also filed a petition for a writ of certiorari which the Supreme Court denied.[4]

Thereafter, on or about June 5, 2020, the defendant filed a § 2255 petition claiming that in light of *Rehaif v. United States*, 139 S. Ct. 2191 (2019)—which the Supreme Court decided while his case was on direct appeal before the Fourth Circuit—his conviction should be vacated because he did not admit to all the elements of the offense. That motion was stayed for some time in light of relevant pending cases in the Fourth Circuit. After lifting the stay, Judge Wooten denied the § 2255 motion and granted summary judgment for the government (ECF No. 85).

On January 27, 2022, the defendant filed his first motion for compassionate release relying on the dangers posed by the COVID-19 pandemic and contending that his medical conditions of Crohn's disease, atrial fibrillation, gastrointestinal bleeding, and ulcerative colitis made him particularly vulnerable to COVID-19 (ECF No. 83). Judge Wooten denied the motion (ECF No. 96) and the Fourth Circuit Court of Appeals affirmed the decision of the district court (ECF Nos. 98, 102, 103).

---

[3] *See United States v. Marsh*, 783 Fed.Appx. 282 (4th Cir. Aug. 2, 2019).

[4] *Marsh v. United States*, 140 S. Ct. 2825 (2020).

The present second motion for compassionate release was filed on September 10, 2025 (ECF. No. 105) and the amended motion was filed on February 10, 2026 (ECF No. 122). The defendant's reply to the government's opposition memoranda was filed on July 7, 2026 (ECF No. 136).

## DISCUSSION

. I. *Unusually Long Sentence*

As is relevant here, USSG § 1B1.13(b)(6) declares that if a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

In addition, § 1B1.13(c) sets out limitations on changes in the law: Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may

be considered for purposes of determining the extent of any such reduction.

The government first argues that the defendant does not meet the criteria for a sentence reduction under § 1B1.13(b)(6) because this subsection limits consideration of changes in law to defendants who have served at least 10 years of the term of imprisonment. The government states that the defendant has not met the 10 year threshold as his sentence of 180 months was imposed on September 11, 2018.[5] It appears the defendant has served almost 9 years of his sentence.

This court agrees with the government that the defendant cannot meet the new threshold in USSG § 1B1.13(b)(6) because he has not served at least 10 years of his federal sentence. This court may not grant a reduction that is inconsistent with the applicable policy statements issued by the Sentencing Commission in November 2023.

*Additional New Claims in Amended Motion*

In his amended motion for compassionate release (ECF No. 122), the defendant raises a new claim that his ACCA predicates are "questionable" and that were he to be sentenced today, he would not face the same enhanced sentence. The government argues that the defendant clearly has three prior convictions that occurred on different occasions from one another for purposes of ACCA and these priors serve as proper predicates.

The defendant also claims that extraordinary and compelling reasons support his motion, that is, USSG Amendment 829. He states that modern scientific and legal understanding recognizes that youthful offenders possess diminished culpability, greater

[5] The defendant is currently housed at Williamsburg Federal Correctional Institution and his scheduled release date from the BOP is July 13, 2030.

impulsivity, and significantly enhanced capacity for rehabilitation.

The government submits that the defendant was approximately 33 years old at the time of the instant offense, which is well beyond the ages contemplated by Amendment 829. From age 16 to 32, the defendant was involved in criminal activity that resulted in an extensive history of adult prior convictions and resulted in his criminal history category of VI.[6]

Effective November 1, 2024, Amendment 829 amended USSG § 5H1.1 to state that a downward departure may be warranted "due to the defendant's youthfulness at the time of the offense or prior offenses." However, Amendment 829 was not made retroactive such that it would permit a post-sentencing reduction or modification of sentence under 18 U.S.C. § 3582(c)(2). Accordingly, Amendment 829 cannot form the basis for a reduction in defendant's sentence.

Moreover, the defendant cannot meet the threshold in USSG § 1B1.13(b)(6) because he has not served at least 10 years of his federal sentence, nor can he show extraordinary and compelling reasons to warrant relief.

II. *Family Circumstances*

The defendant next submits that he is the only caretaker for his incapacitated mother,

---

[6] According to the transcript (ECF No. 67) of the defendant's sentencing hearing in 2018 before Judge Wooten, defense counsel argued that the three offenses supporting the ACCA enhancement happened when the defendant was 17 years old, 21 years old, and 23 years old, so he was still a very young man when those happened. The government stated during the hearing that due to his criminal history points, that even if he was not found to be an armed career criminal, he still would have been a criminal history category VI. Judge Wooten acknowledged consideration of all the § 3553(a) factors and issued his sentence of 180 months which the Fourth Circuit Court of Appeals affirmed.

and he seeks compassionate release under USSG § 1B1.13(b)(3)(C). He argues that his mother, who is 68 years of age, has numerous health conditions and lives alone where she needs assistance ambulating, shopping, being transported, and other daily activities. The only documentation the defendant provided for his conclusory assertion that his mother was incapacitated and that he is her only available caregiver, was a one and one-half page printout, which outlined the various medications that his mother was prescribed as of August 28, 2024 (ECF No. 105-1). Those medications appear to address asthma, migraines, cough, allergies (as needed), cholesterol, pain (as needed), and blood pressure—none of which on their face appear to be incapacitating.

In his amended motion (ECF No. 122), the defendant includes a written request by his mother for her son assist her and it includes some additional medical documentation. However, those documents only show that his mother has complained of knee pain for several years. During a medical visit in December 2025, the defendant's mother declined a knee brace, received a corticosteroid shot, and was told to come back in 6-8 weeks for a follow up if necessary. Additionally, those same documents show that she is mobile and able to go to medical appointments. Most importantly, as noted in one recent doctor's report, his mother "does some cleaning at a church a few times a week."

The government argues that this is clear evidence that not only does the defendant's mother have access to some form of transportation, but that she is mobile, receives meals on wheels, is able to care for herself, is active and productive, and performs manual labor. Nothing in the documents show that she is incapacitated and needing a caregiver. Moreover,

the defendant fails to note how she has cared for herself since he has been in BOP custody since 2017. The defendant also contends that his brother is unable to provide the care necessary for his mother because he resides outside South Carolina and serves in the U.S. Navy.

This court agrees with the government that the defendant has not satisfied his burden under USSG § 1B1.13(b)(3)(C) or that there are any extraordinary and compelling reasons for considering compassionate release on this issue relating to family circumstances.

*III. Defendant's Medical Conditions*

In his amended complaint for compassionate release (ECF No. 122), the defendant contends that he suffers from multiple documented medical conditions including ulcerative colitis, gastrointestinal complications, chronic pain, lymphedema, edema and polyneuropathy, cardiovascular issues, and testicular dysfunction and varicocele.[7]

The government argues that the defendant's medical records do not show any life-threatening, terminal illness or medical illness or diagnosis that prevents him from self-care within the BOP. The government submits that the defendant does not have any medical condition that qualifies as a "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which [she] is not expected to recover." USSG § 1B1.13(b)(1)(B). Additionally, the defendant is not "suffering from a medical

[7] In his first motion for compassionate release filed in 2022, the defendant stated that he had the following medical conditions: Crohn's disease, atrial fibrillation, gastrointestinal bleeding, and ulcerative colitis.

condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in heath or death." USSG § 1B1.13(b)(1)(C).

The government reports that the defendant's 2025 medical records show that when he was seen on August 7, 2025, he was "well-appearing," "lungs clear," "heart sounds regular," "moving all extremities," and "alert, oriented, gait normal." The medical records also indicate that in June 2025, the defendant was in "SHU housing," which refers to Special Housing Unit normally for disciplinary issues.

The government notes in its response brief that when seen in April 2025, medical records indicate that the defendant's chief complaint was "gastrointestinal" and noted, "He appears to be doing very well clinically, and is compliant with all meds, diet & exercise, as much as possible." At that time, they noted, "edema," "polyneuropathy," ulcerative colitis," "unspecified internal derangement of unspecified knee," and "vitamin D deficiency." Another medical examination in April 2025, notes "Iron deficiency, history of inflammatory bowel disease, family history of colonic polyps, vitamin D deficiency, and benign hypertension." It appears on documentation signed by the defendant that in September 2024, he refused to take prescribed medication and was advised by BOP medical staff that refusal to take the medication could cause complications with his ulcerative colitis. Likewise, in January 2025, documentation signed by the defendant shows that he refused lab work prescribed by BOP medical staff.

To the extent that the defendant argues that his medical care was delayed or

inadequate at the BOP, those claims are not properly raised in a motion for compassionate release under 28 U.S.C. § 3582(c)(1)(A).

This court agrees with the government that the defendant's medical history does not offset the requirements under § 1B1.13(b)(6) that he fails to meet.

IV. *Rehabilitation*

The defendant asserts in his original motion that he has served 60 percent of his sentence and that he has been disciplinary-free for more than two years. He states that he has been an active leader on the compound within the Christian community; that he has a job upon release as a truck driver delivering goods; and that he has strong ties with the community leaders to promote positive change. The defendant alleges that he no longer poses a threat to the community such that incarceration is no longer necessary.

In his amended motion, the defendant states that he has been disciplinary-free for more than 33 months; he is employed at UNICOR prison industries (commenced work June 2026); he has extensive training in education and rehabilitative programming; active involvement in community affairs; and positive recognition by psychology staff, chaplains, and BOP administration. He contends that his instant offense was non-violent and his criminal history stems entirely from youthful conduct.

The government notes that the BOP has continued to classify the defendant at a high risk recidivism level as recently as February 6, 2026. The government also notes that the defendant has a history of committing new criminal offenses while on state bond for prior offenses while on state parole and probation. The defendant has also had several disciplinary

violations while at the BOP, one of which was possession of a dangerous weapon.[8]

The government states that in its order denying the defendant's first motion for compassionate release in 2022 (ECF No. 96), Judge Wooten found that the defendant was a violent offender who posed a threat to the public if released; that the defendant had committed serious offenses since he was 16 years old; and the instant offense (felon in possession of a firearm) was a significant crime that involved fleeing from the police with a loaded handgun on a college campus. Judge Wooten found that the § 3353(a) factors weighed against the defendant's release.

Rehabilitation of the defendant is not, in itself, an extraordinary and compelling reason for purposes of the policy statement as set out in 28 U.S.C. § 994(t) and USSG § 1B1.13(d). However, rehabilitation may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of sentence is warranted. *Id*.

As this court finds no other extraordinary and compelling reason for consideration of compassionate release, this court may not award a reduction solely on the basis of the defendant's claims of rehabilitation. Moreover, the defendant has failed to demonstrate that he is not a danger to the safety of the community or otherwise should be released under the § 3353 factors.

---

[8] Those violations include: May 4, 2023 — fighting with another person (code 201); October 4, 2022 — refusing to obey an order (code 307): March 31, 2022 — possessing a dangerous weapon (denied having a shank found in cell) (code 104); February 3, 2020 — refusing work/assignment (code 306); and March 26, 2019 — absent from assignment (code 310). According to the BOP, 100-level offenses are the most serious; 200-level offenses are moderately serious; and 300-level offenses are the least serious.

*V. Factors Under 18 U.S.C. § 3553(a)*

The government argues that even if the defendant had presented extraordinary and compelling reasons (which this court has determined herein that the defendant does not), the court should deny his motion in light of the statutory sentencing factors under 18 U.S.C. § 3553(a), because the factors weigh heavily against the defendant's release.

The government reiterates that in the instant case, on or about July 25, 2017, law enforcement encountered the defendant while he was carrying a loaded .40 caliber handgun in his waistband while walking down a sidewalk in the Benedict College area of Columbia. At the time, the defendant was wearing an ankle monitor from state court while he was out on bond for various offenses. After being confronted by the officer, the defendant struggled with the officer and attempted to flee. After being detained, the defendant gave law enforcement a false name, that being the name of his brother who was serving in the U.S. Navy.

At the defendant's sentencing on September 11, 2018, Judge Wooten conducted a detailed analysis of the §3553(a) factors set out in the sentencing Transcript (ECF No. 67). Because this court does not find an extraordinary or compelling reason on any of the defendant's claims here, there is no need for this court to further discuss the § 3553(a) factors.

## CONCLUSION

The court has carefully considered the totality of the record before it and conducted an individualized analysis of the facts and issues raised by the parties under the recent changes in sentencing laws and amendments to the Guidelines. The defendant cannot meet the new threshold in USSG § 1B1.13(b)(6) because he has not served at least 10 years of his federal sentence and this court may not grant a reduction that is inconsistent with the applicable policy statements issued by the Sentencing Commission in November 2023.

For the reasons stated herein, the defendant's motions (ECF Nos. 105, 122) are respectfully denied.

IT IS SO ORDERED.

Joseph F. Anderson, Jr.

August 24, 2026
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge